VILLANTI, Judge.
Taylor Van Weelde (the Husband) seeks review of the final judgment of dissolution of his marriage to Emily Van Weelde (the Wife). The Husband takes issue only with the court’s earlier order granting the Wife’s motion for summary judgment and thereby “de-legitimizing” R.D.W., the Wife’s four-year-old son of whom the Husband is the legal — but not biological — father. Because the trial court used the incorrect legal standard when determining whether to grant the motion for summary judgment, we must reverse and remand for further proceedings.
When the Husband and Wife first met, the Wife was already pregnant with R.D.W. There is no dispute that the Husband is not the biological father of R.D.W. However, the Husband was present at R.D.W.’s birth in 2006, the Husband is named on R.D.W.’s birth certificate as the father, and the Husband and Wife both signed a voluntary Acknowledgement of Paternity pursuant to section 382.013(2)(c), Florida Statutes (2006), naming the Husband as R.D.W.’s father.
The Husband and Wife married when R.D.W. was approximately sixteen months old. For the entirety of R.D.W.’s life, the Husband has been held out as his father, and the Husband is the only father R.D.W. has ever known. R.D.W.’s alleged biological father is reportedly living in Texas, has had no contact with R.D.W. at any time since his birth, and has done nothing to support R.D.W.
When the Wife filed her petition for dissolution of marriage, she alleged that there were no minor children born of the marriage. The Wife’s sole basis for this allegation was that the Husband was not the biological father of R.D.W. In his answer and counterpetition, the Husband admitted that he was not R.D.W.’s biological father, but he argued that he is the legal father of R.D.W. and that both he and R.D.W. have the right to maintain that legal status. Nevertheless, the trial court granted the Wife’s motion for summary judgment on this issue, concluding that the Husband’s admission that he is not the biological father of R.D.W. was dispositive of the matter. Thus, the trial court denied the Husband’s request for a time-sharing schedule and a determination of child support and effectively “de-legitimized” R.D.W. The Husband now appeals this ruling.
In making its ruling on the Wife’s motion for summary judgment, the trial court did not consider whether the Husband was the legal father of R.D.W. But, despite the Wife’s arguments to the contrary, the Husband is, in fact, the legal father of R.D.W. When R.D.W. was born, the Husband and Wife both signed a sworn voluntary Ac- *920 knowledgement of Paternity in accordance with section 382.013(2)(c). That section provides, in pertinent part,
If the mother is not married at the time of the birth, the name of the father may not be entered on the birth certificate •without the execution of an affidavit signed by both the mother and the person to be named as the father. The facility shall give notice orally or through the use of video or audio equipment, and in writing, of the alternatives to, the legal consequences of, and the rights, including, if one parent is a minor, any rights afforded due to minority status, and responsibilities that arise from signing an acknowledgment of paternity, as well as information provided by the Title IV-D agency established pursuant to s. 409.2557, regarding the benefits of voluntary establishment of paternity. Upon request of the mother and the person to be named as the father, the facility shall assist in the execution of the affidavit, a notarized voluntary acknowledgment of paternity, or a voluntary acknowledgment of paternity that is witnessed by two individuals and signed under penalty of perjury as specified by s. 92.525(2).
(Emphasis added.) Section 742.10, Florida Statutes (2006), sets forth the legal ramifications of a signed voluntary Acknowl-edgement of Paternity. It provides, in pertinent part:
[WJhen an affidavit, a notarized voluntary acknowledgment of paternity, or a voluntary acknowledgment of paternity that is witnessed by two individuals and signed under penalty of perjury as provided for in s. 382.0IS or s. 382.016 is executed by both parties, or when paternity is adjudicated by the Department of Revenue as provided in s. 409.256, such adjudication, affidavit, or acknowledgment constitutes the establishment of paternity for purposes of this chapter. If no adjudicatory proceeding was held, a notarized voluntary acknowledgment of paternity or voluntary acknowledgment of paternity that is witnessed by two individuals and signed under penalty of perjury as specified by s. 92.525(2) shall create a rebuttable presumption, as defined by s. 90.304, of paternity and is subject to the right of any signatory to rescind the acknowledgment within 60 days after the date the acknowledgment was signed or the date of an administrative or judicial proceeding relating to the child, including a proceeding to establish a support order, in which the signatory is a party, whichever is earlier.
§ 742.10(1) (emphasis added). Subsection (4) provides that after the sixty-day period referenced in subsection (1) has passed, “a signed voluntary acknowledgement of paternity shall constitute an establishment of paternity and may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenger.” § 742.10(4) (emphasis added). In addition, subsection (5) provides that “[¡judicial or administrative proceedings are not required or permitted to ratify an unchallenged acknowl-edgement of paternity.” § 742.10(5). Nothing in either section 382.013(2)(c) or section 742.10 requires that the person signing the voluntary Acknowledgement of Paternity be the child’s biological father. Instead, the statutes create a mechanism for establishing legal paternity regardless of biology.
Here, both the Husband and Wife signed a voluntary Acknowledgement of Paternity pursuant to section 382.013(2)(c) when R.D.W. was born, and neither of them challenged that Acknowledgement during the sixty-day period provided for in the statute. Thus, this unchallenged voluntary Acknowledgement of Paternity established the Husband’s paternity of *921 R.D.W. He was neither required nor permitted to take action under chapter 742 to further establish his paternity. Nor was he required or permitted to take steps to adopt R.D.W. Instead, once the voluntary Acknowledgement of Paternity was signed and the Husband’s name was placed on R.D.W.’s birth certificate, the Husband became R.D.W.’s legal father for all purposes. As a child with both a mother and father named on his birth certificate, R.D.W. was a legitimate child. And this became even more true when the Husband and Wife subsequently married. See § 742.091 (providing that if the mother of a child born out of wedlock and the reputed father marry after the child is born, the child “shall in all respects be deemed and held to be the child of the husband and wife, as though born within wedlock”).
Nevertheless, despite the Husband’s status as R.D.W.’s legal father, the trial court granted the Wife’s motion for summary judgment based solely on biology and with no consideration of either the Husband’s rights or those of R.D.W. This was clearly error. Twenty years ago, the Florida Supreme Court stated that “the presumption of legitimacy is based on the policy of protecting the welfare of the child, i.e., the policy of advancing the best interests of the child.” Dep’t of Health & Rehabilitative Servs. v. Privette, 617 So.2d 305, 307 (Fla.1993). The court recognized that “[o]nce children are born legitimate, they have a right to maintain that status both factually and legally if doing so is in their best interests.” Id. Moreover, “[t]he child’s legally recognized father likewise has an unmistakable interest in maintaining the relationship with his child unim-pugned.” Id. Thus, “there must be a clear and compelling reason based primarily on the child’s best interests to overcome the presumption of legitimacy even after the legal father is proven not to be the biological father.” Id. at 309 (underline emphasis added). And the burden of proof required to overcome this presumption is equivalent to that needed to terminate the legal father’s parental rights because the proceedings “will have the effect of vesting parental rights in the putative natural father and removing parental rights from the legal father.” Id. at 309 n. 7.
Here, the trial court erred by focusing solely on biology and failing to consider whether there was a clear and compelling reason based on RJD.W.’s best interests to overcome his presumption of legitimacy and to remove the Husband’s rights as his legal father. Because the trial court used the incorrect legal standard, it did not consider whether it was in R.D.W.’s best interests to “de-legitimize” him, and the Wife’s desire to dissolve her marriage to the Husband, standing alone, is not a clear and compelling reason to do so. This legal error requires this court to reverse and remand for the trial court to reconsider the issue of the Husband’s rights as R.D.W.’s legal father under the correct legal standard.
In this appeal, as she did in the trial court, the Wife contends that the Husband’s fraud in signing the voluntary Ac-knowledgement of Paternity when he was not the biological father prevents him from enforcing his rights. She points to section 742.10(4), which provides that a voluntary Acknowledgement of Paternity creates only a rebuttable presumption of paternity that can be challenged based on fraud or mistake. She argues that the Husband committed fraud when he signed the voluntary Acknowledgement of Paternity knowing that he was not the biological father and that this fraud eliminates his rights as the legal father. There are three problems with this argument.
First, as noted above, section 382.013(2)(c) does not require that the “person to be named as the father” be the biological father. Thus, it is not clear that *922 the Husband’s signature on the voluntary Acknowledgement of Paternity constituted fraud in the first instance.
Second, the Wife also signed the voluntary Acknowledgement of Paternity with full knowledge that the Husband was not the biological father, and thus she was complicit in any alleged fraud. In such circumstances, a parent may be estopped from challenging the validity of the ac-knowledgement of paternity. See, e.g., Allison v. Medlock, 983 So.2d 789, 790-91 (Fla. 4th DCA 2008) (holding that mother could not establish fraud against man who had signed a voluntary acknowledgement of paternity because the mother also voluntarily signed the acknowledgement knowing that the man was not the father and thus since she was complicit in the fraud she could not now benefit from it); of. Barroso v. Respiratory Care Servs., Inc., 518 So.2d 373, 376-77 (Fla. 5th DCA 1987) (holding that a party guilty of committing fraud could not state a claim for fraud against another party who was complicit in the same fraudulent act).
Third, the Wife may be equitably es-topped from disputing the Husband’s paternity of R.D.W. at this point in time. In Privette, the supreme court noted that parents can be equitably estopped from disputing paternity when they have previously acknowledged the legal father’s paternity. 617 So.2d at 308 n. 3. Moreover, a legal father’s paternity may be ruled unassailable when “the legal father has established a mutually rewarding relationship with the child, he desires to continue exercising parental rights, he is supporting the child to the best of his ability, and maintaining the existing relationship is in the child’s best interests.” Id.
Here, the Wife spent the first four years of R.D.W.’s life acknowledging the Husband as R.D.W.’s father. The Husband was listed as the father with R.D.W.’s child care providers and health care providers. He was held out to all as the child’s father. More importantly, it appears that the Husband has established a mutually rewarding relationship with the child, he understandably desires to continue exercising parental rights, and he is supporting the child to the best of his ability. These facts would seem to support a finding that the Wife was equitably estopped from challenging the Husband’s status as the legal father in the first instance. Certainly, summary judgment was improper on this basis as the Wife failed to prove a negative, i.e., that it was not in R.D.W.’s best interest to maintain a relationship with his legal father. Cf. Land Dev. Servs., Inc. v. Gulf View Townhomes, LLC, 75 So.3d 865, 868-69 (Fla. 2d DCA 2011) (noting that “[t]he party moving for summary judgment has the burden to establish irrefutably that the nonmoving party cannot prevail were a trial to be held” and that the trial court’s sole function at the summary judgment stage is to determine whether the moving party has “proved a negative, that is, ‘the nonexistence of a genuine issue of a material fact’ ” (quoting Winston Park, Ltd. v. City of Coconut Creek, 872 So.2d 415, 418 (Fla. 4th DCA 2004))).
While we hold that the trial court erred in granting summary judgment in favor of the Wife, it is not this court’s role when a case is in this posture to determine whether the Husband should retain his legal rights to R.D.W. Instead, because the trial court applied the incorrect legal standard when considering the Wife’s motion for summary judgment, we must reverse and remand for the trial court to reconsider the motion using the correct legal standard. Moreover, in accordance with Privette, the trial court must appoint a guardian ad litem to represent R.D.W.’s interests in making this determination. 617 So.2d at 308 n. 5.
*923 Reversed and remanded for further proceedings not inconsistent with this opinion.
WALLACE and MORRIS, JJ., Concur.