ROTHENBERG, J.
Carlos Flores (“Mr. Flores”) seeks cer-tiorari review of the 'trial court’s order granting Vanessa Sanchez’s (“the Mother”) ore tenus motion to compel Mr. Flores to submit to paternity testing. Because Mr. Flores has demonstrated that he will suffer “irreparable harm” if the order stands and that the order departs from the essential requirements of law, we grant the petition, quash the order under review, and remand for further proceedings consistent with this opinion.[1]

I. FACTS

The trial court’s order compelling Mr. Flores to submit to paternity testing arises from an action filed by the Mother pursuant to section 742.10, Florida Statutes (2011), in which she attempts to rebut Mr. Flores’ presumption of paternity based on fraud and duress. In this action, the Mother seeks: (1) to disestablish Mr. Flores’ paternity and to have his -name removed from B.F.’s (“the Child”) birth certificate by the Office of Vital Statistics; (2) a determination that the alleged biological father is in fact the Child’s biological father through scientific testing; and (3) to have the biological father’s name added to the Child’s birth certificate as the legal father.
Based on the limited record before this .Court,[2] the pertinent facts are as follows. Prior to the Child’s birth, the Mother wished to give up the Child, and she and Mr. Flores agreed that Mr. Flores would be named as the Child’s father on the Child’s birth certificate and, upon the Child being released from the hospital, the Child would permanently live with, and be raised by, Mr. Flores and his wife (“Mrs. Flores”). Further, the Mother, Mr. Flores, and Mrs. Flores memorialized their plan in an agreement that was notarized eight days after the Child’s birth, which states, in part, as follows:
I, Vanessa Sanchez hand over any/all rights concerning [the Child] to her legal guardians [Mrs. Flores] and her Legal Father. All parties have agreed that [the Child] will be the sole responsibility and her guardianship for her until her 21st Birthday. I, Vanessa Sanchez being of sole [sic] mind relinquish any maternal rights. I also advise that I am of clear mind, and have done so voluntarily to give the baby to them as her parents. I will have no contact, nor *1107 action with the child, unless [Mr. Flores and Mrs. Flores] extend this courtesy to me at their discretion. I am sure that they will treat and care for her as if she was her biological parents and will not demand or request any rights concerning her in the future. Let this agreement serve as to fully give up any rights to the Legal Father as stipulated on her Legal Birth Certificate. Also, in the future [Mrs. Flores] will appear on the mother’s name area in the Birth Certificate therefore declaring her as [the Child’s] birth and natural mother.
As planned, the Child’s birth certificate, which was filed with the Office of Vital Statistics two days after the Child’s birth in April 2010, reflects that the Child’s parents are the Mother and Mr. Flores. Further, the Mother allowed Mr. Flores and Mrs. Flores to take the Child home from the hospital to reside exclusively with Mr. Flores and Mrs. Flores.[3] However, the Mother’s name still appears on the Child’s birth certificate.

II. ISSUE

The issue presented in this petition for writ of certiorari is whether the trial court’s order compelling Mr. Flores to submit to paternity testing constitutes a departure from the essential requirements of law, resulting in material injury for the remainder of the case that cannot be remedied on appeal. See Rodriguez v. Miami-Dade Cnty., 117 So.3d 400, 404 (Fla.2013) (stating that when a party seeks certiorari relief, the threshold question is whether there is a material injury that cannot be corrected on appeal — “irreparable harm” — and whether the order under review constitutes a departure from the essential requirements of law); State, Dep’t of Revenue ex rel. Chambers v. Travis, 971 So.2d 157, 159 n. 1 (Fla. 1st DCA 2007) (granting a petition for writ of cer-tiorari and quashing an order compelling paternity testing because an order compelling paternity testing could cause irreparable harm); Dep’t of Revenue ex rel. T.E.P. v. Price, 958 So.2d 1045, 1046 (Fla. 2d DCA 2007).

III. ANALYSIS

“[N]o party to any family law proceeding is entitled to an order requiring another party to submit to genetic testing unless (1) the proceedings place paternity ‘in controversy[1] and (2) ‘good cause’ exists for the testing.” Travis, 971 So.2d at 162 (quoting Dep’t of Revenue ex rel. Freckleton v. Goulbourne, 648 So.2d 856, 857-58 (Fla. 4th DCA 1995)) (holding that al though paternity was “in controversy” as a result of the Department of Revenue instituting child support proceedings, the legal father who signed voluntary acknowledgment of paternity did not establish “good cause” because his reason for seeking paternity testing was “to be sure” that he was the biological father); see also State, Dep’t of Revenue ex rel. Carnley v. Lynch, 53' So.3d 1154, 1157 (Fla. 1st DCA 2011) (finding that “ ‘good cause’ would have existed for genetic testing under these facts if [the legal father who signed voluntary acknowledgment of paternity] had instituted proceedings under section 742.10(4), Florida Statutes (2009), or section 742.18(1), Florida Statutes (2009), to ‘disestablish’ paternity.”) (quoting Travis, 971 So.2d at 161).
Prior to ordering paternity testing, the trial court must also determine that *1108 the testing would be in the child’s best interest. See R.S.R. v. A.K., 801 So.2d 325, 325 (Fla. 1st DCA 2001) (granting petition for writ of certiorari and quashing order compelling legal father to submit to paternity testing where trial court failed to consider whether paternity testing was in child’s best interests, and ordering that “[o]n remand, the trial court shall appoint a guardian ad litem to represent the child’s interest before resolving the issues.”). In the instant case, the Mother’s action placed paternity “in controversy,” and therefore, the focus will be on whether “good cause” exists for ordering the paternity testing and whether the trial court determined that the paternity testing would be in the Child’s best interests.

A. Whether “good cause” exists for ordering Mr. Flores to submit to paternity testing

1. Rebuttable presumption that Mr. Flores is the Child’s legal father

Section 382.013, Florida Statutes (2010), requires that a birth certificate be filed within five days of a live birth. When a birth occurs in a hospital, “the person in charge of the facility shall be responsible for preparing the certificate, certifying the facts of the birth, and filing the certificate with the local registrar.” § 382.013(l)(a). As to entering the name of the father on the birth certificate when the mother is unmarried at the time of the child’s birth, section 382.013(2)(e) provides as follows:
If the mother is not married at the time of the birth, the name of the father may not be entered on the birth certificate without the execution of an affidavit signed by both the mother and the person to be named as the father. The facility shall give notice orally or through the use of video or audio equipment, and in writing, of the alternatives to, the legal consequences of, and the rights, including, if one parent is a minor, any rights afforded due to minority status, and responsibilities that arise from signing an acknowledgment of paternity, as well as information provided by the Title IV-D agency established pursuant to s. 409.2557, regarding the benefits of voluntary establishment of paternity. Upon request of the mother and the person to be named as the father, the facility shall assist in the execution of the affidavit, a notarized voluntary acknowledgment of paternity, or a voluntary acknowledgment of paternity that is witnessed by two individuals and signed under penalty of perjury as specified by s. 92.525(2).
(emphasis added).
It is undisputed that the mother was unmarried when she gave birth to the Child at a hospital located in Miami-Dade County. Thus, in preparing the birth certificate for filing, “the person in charge of the [hospital]” could not have named Mr. Flores as the Child’s father on the birth certificate unless the Mother and Mr. Flores executed an affidavit or acknowledgment of paternity. See § 382.013(l)(a); § 382.013(2)(c).[4] As Mr. Flores’ name appears on the Child’s birth certificate as the Child’s father, we must assume that the hospital complied with section 382.013(2)(c) by obtaining an affidavit or a voluntary acknowledgment of paternity from Mr. *1109 Flores and the Mother.[5] See §§ 382.013(2)(c), 382.013(l)(a). Further, as neither Mr. Flores nor the Mother sought to rescind the voluntary acknowledgment of paternity within sixty days, as set forth in section 742.10, there is a presumption that Mr. Flores is the Child’s legal father. See Travis, 971 So.2d at 160 (noting that a voluntary acknowledgment of paternity executed pursuant to section 382.013 establishes a rebuttable presumption of paternity).
At this juncture, although Mr. Flores is presumed to be the Child’s legal father, the presumption is rebuttable. Section 742.10(1) gives the individuals named on a birth certifícate sixty days to rescind the voluntary acknowledgment of paternity, but after that sixty-day period has passed, the presumption can only be rebutted by proof of “fraud, duress, or material mistake of fact.”[6] See § 742.10(4) (“After the 60-day period referred to in subsection (1), the signed voluntary acknowledgment of paternity shall constitute an establishment of paternity and may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenger .... ”).
In the instant ease, it is undisputed that neither Mr. Flores nor the Mother rescinded any acknowledgment of paternity during the sixty-day period set forth in section 742.10(1). As such, the Mother can rebut the presumption of paternity only if she can establish fraud, duress, or material mistake of fact.

2. The Mother’s challenge to Mr. Flores’ presumption of paternity based on fraud and duress

The Mother challenges Mr. Flores’ established paternity based on “fraud, duress, and diminished capacity”[7] by alleging that Mr. Flores fraudulently signed the birth certificate knowing that he could not be the Child’s biological father because she and Mr. Flores have never maintained an intimate relationship. The Mother claims the “fraud was perpetrated solely for the purpose of bypassing the adoption requirements as set forth in the Florida Statutes, Chapter 63.” We disagree that the alleged “fraud” conclusively rebuts Mr. Flores’ presumption of paternity.
In Allison v. Medlock, 983 So.2d 789, 790 (Fla. 4th DCA 2008), the Fourth District Court of Appeal addressed an order requiring Mr. Allison to submit to DNA testing in a paternity action. When the child was born in 2003, Mr. Allison and the mother executed a paternity affidavit pursuant to section 382.013. Allison, 983 So.2d at 790. For approximately the next four years, Mr. Allison was treated as the child’s father, and both Mr. Allison and his family were “very involved in the child’s life.” Id. Paternity became an issue in September 2007 when the mother relocated to another state without Mr. Allison’s knowledge. That same month, Mr. Allison filed a Petition to Determine Paternity and for Related Relief and also filed a Verified Emergency Motion to Grant Temporary Custody/Visitation. Id. The following month, the mother filed an answer to Mr. Allison’s petition, and also filed a counter- *1110 petition to determine paternity and a motion for scientific testing. Id. The trial court found that the paternity affidavit complied with section 382.013 and, therefore, there was a rebuttable presumption that Mr. Allison was the child’s father. Id. The trial court, however, granted the mother’s motion for DNA testing.
In reviewing the order compelling Mr. Allison to submit to DNA testing, the Fourth District Court of Appeal noted that during a hearing before the trial court, the mother testified that there was a material mistake of fact because, before the child’s birth, both she and Mr. Allison knew that Mr. Allison was not the child’s biological father, but nonetheless signed the paternity affidavit. In rejecting the mother’s argument, the Fourth District stated:
According to this testimony, neither party was operating under a mistake of fact at the time the paternity affidavit was signed. Likewise, she cannot establish fraud. She was not the victim of any fraud, she was complicit in signing the affidavit, and she cannot now benefit from her own alleged fraud. Finally, she did not present any credible evidence of duress. The trial court did not make any findings on the record or in its order that the mother has demonstrated either fraud, duress, or material mistake of fact.
Id. at 790-91 (emphasis added).
Likewise, in Van Weelde v. Van Weelde, 110 So.3d 918, 922 (Fla. 2d DCA 2013), the Second District Court of Appeal found that when a child’s mother “signed the voluntary Acknowledgement of Paternity with full knowledge that the [legal father] was not the biological father,” the child’s mother “was complicit in any alleged fraud.” Under those circumstances, “a parent may be estopped from challenging the validity of the acknowledgment of paternity.” Id.
In the instant case, based on the record before this Court, it does not appear that the trial court addressed whether the Mother can meet her burden of establishing either fraud or duress as required by section 742.10(4), or whether the Mother’s allegations of duress or fraud are supported by any reliable evidence. Neither the order under review nor the transcript of the hearing involving the ore tenus motion for paternity testing contain any findings as to whether the Mother can demonstrate fraud or duress. Moreover, based on the Agreement and the facts asserted by the Mother in her petition to disestablish paternity, it does not appear that she could possibly demonstrate that she was the victim of fraud because she was complicit in the alleged fraud. See Allison, 983 So.2d at 790-91; see also Van Weelde, 110 So.3d at 922.
Further, although the Mother asserts the statutory ground of duress in seeking to rebut the presumption of paternity in Mr. Flores’ favor, her petition does not assert any facts substantiating her allegation of duress. Rather, the Agreement entered into by Mr. Flores and Mother indicates that she was not under duress— she was of “clear mind” and voluntarily agreed to the arrangement. Therefore, despite the Mother’s challenge to Mr. Flores’ paternity under section 742.10(4) on the basis of fraud and duress, the Mother, at this point, has not established the “good cause” needed to order the paternity testing because she has not demonstrated that any fraud or duress occurred.

B. Whether compelling Mr. Flores, the Child’s legal father, to submit to paternity testing is in the Child’s best interests

Even if the trial court had found that the Mother met her burden of establishing either fraud or duress, and there *1111 fore, “good cause” for ordering the paternity testing, the trial court nonetheless should have made findings as to whether ordering paternity testing was in the Child’s best interest. See Price, 958 So.2d at 1046 (“Florida favors a strong ‘public policy that in a case [contesting paternity], DNA tests to establish that a man other than the legal father of a child is the biological father will not be ordered unless the court determines that it is in the best interest of the child.’ ”) (alteration in original) (quoting Callahan v. Dep’t of Revenue ex rel. Roberts, 800 So.2d 679, 680 (Fla. 5th DCA 2001)); Hebner v. Barry, 834 So.2d 305, 306-07 (Fla. 4th DCA 2003) (holding that the trial court departed from the essential requirements of law in ordering paternity testing where the trial court did not determine that “there is a clear and compelling reason why the child’s best interests would be served by overcoming the presumption that the legal father is the father”). “[T]he presumption of legitimacy is based on the policy of protecting the welfare of the child, i.e., the policy of advancing the best interests of the child.” Dep’t of Health & Rehabilitative Servs. v. Privette, 617 So.2d 305, 307 (Fla.1993); see also Van Weelde, 110 So.3d at 921. “Once children are born legitimate, they have a right to maintain that status both factually and legally if doing so is in their best interests.” Privette, 617 So.2d at 307 (citing Art. I, § 9, Fla. Const.). Further, “[t]he child’s legally recognized father likewise has an unmistakable interest in maintaining the relationship with his child un-impugned, such that his opposition to the blood test and reasons for so objecting would be relevant evidence in determining the child’s best interests.” Id. at 307-08 (citations omitted); Van Weelde, 110 So.3d at 921. Therefore, before ordering paternity testing when a child has a legal father, “the trial court is required to hear argument from the parties, including the legal father if he wishes to appear and a guardian ad litem appointed to represent the child.”[8] Privette, 617 So.2d at 308 (footnotes omitted).
In the instant case, based on the record before this Court, the trial court failed to determine whether ordering the Child’s legal father, Mr. Flores, to submit to paternity testing would be in the Child’s best interest. Although an evidentiary hearing is necessary to address the Child’s best interest, based on the limited record before this Court, it appears that the Mother will find it difficult to meet her burden of proving by clear and convincing evidence that it would be in the Child’s best interest to compel Mr. Flores to submit to a paternity test. See Privette, 617 So.2d at 308 (holding that the party seeking paternity testing “bears the burden of proving ... by clear and convincing evidence” that “the child’s best interests will be better served even if the blood test later proves the child’s factual illegitimacy.”). The record reflects that the Child, who is now almost four years old, began to live with Mr. Flores when she was only two days old. At this point, there is nothing in the record to discount the likelihood that during this almost four-year period, the Child and Mr. Flores have formed a loving and caring child-father relationship and that Mr. Flores has provided for the Child financially.
In contrast, it appears that the alleged biological father knew that the Mother was pregnant and, although he believed that he was the Child’s biological father, he took absolutely no action to assert his alleged *1112 paternity. At this point, even if it were determined that the alleged biological father is in fact the Child’s biological father, it most likely will not be in the Child’s best interests to disestablish Mr. Flores’ paternity and have the alleged biological father named as the Child’s father on her birth certificate as requested by the Mother. As the Florida Supreme Court recognized:
It is conceivable that a man who has established a loving, caring relationship of some years’ duration with his legal child later will prove not to be the biological father. Where this is so, it seldom will be in the children’s best interests to wrench them away from their legal fathers and judicially declare that they now must regard strangers as their fathers. The law does not require such cruelty toward children.
Privette, 617 So.2d at 309; see also Allison, 983 So.2d at 791 (“Florida favors a strong public policy that in a case [contesting paternity], DNA tests to establish that a man other than the legal father of a child is the biological father will not be ordered unless the court determines that it is in the best interest of the child.”) (alteration in original) (emphasis added) (quoting Price, 958 So.2d at 1046) (internal quotation marks omitted).

TV. CONCLUSION

The trial court failed to determine whether “good cause” exists to order paternity testing based on the Mother’s allegations of fraud and duress and also failed to determine whether compelling Mr. Flores to submit to paternity testing would be in the Child’s best interest. For these reasons, we grant the petition for writ of certiorari and quash the order requiring Mr. Flores to submit to paternity testing. On remand, the Mother may request an evidentiary hearing to address these issues. However, prior to any hearing addressing the Child’s best interest, the trial court must appoint a guardian ad litem to represent the Child as requested by Mr. Flores. Privette, 617 So.2d at 308.
Petition granted; order quashed; and remanded for further proceedings.

. Mr. Flores’ counsel filed a notice of non-final appeal. As counsel likely recognized that the order compelling Mr. Flores to submit to paternity testing is a non-final, non-appealable order, see Fla. R. App. P. 9.130(3), counsel filed a petition for writ of certiorari rather than an initial brief. We, therefore, treat Mr. Flores’ notice of non-final appeal as a petition for writ of certiorari. See Allison v. Medlock, 983 So.2d 789, 790 (Fla. 4th DCA 2008) (redesignating a "purported appeal of an order requiring DNA testing in a paternity action” as a petition for writ of certiorari).

. The following documents were provided to
this Court by the parties: (1) Complaint for Determination of Paternity and Timesharing Paternity filed on January 4, 2011; (2) Amended Complaint for Determination of Paternity and Timesharing; (3) Order Denying the Mother’s Motion for Scientific Paternity Testing without prejudice to amend, entered by Judge Bernard S. Shapiro on October 6, 2011; (4) transcript of hearing conducted by Judge Sarduy on April 11, 2013; (5) order granting the Mother’s ore tenus motion to compel Mr. Flores to submit to paternity testing entered by Judge Sarduy on April 11, 2013; (6) the Child’s Certificate of Birth issued by State of Florida Office of Vital Statistics, naming the Child's parents as the Mother and Mr. Flores; (7) transcript of Mr. Flores' deposition; (8) a hospital bill; and (9) an agreement between the Mother, Mr. Flores, and Mr. Flores' wife.

. During the pendency of this action, the Mother has been granted timesharing with the Child, but there is no indication in the record that the alleged biological father, who was named as a respondent in the Mother’s action, has sought any timesharing with the Child.

. Section 382.013(2)(a) provides that "[i]f the mother is married at the time of birth, the name of the husband shall be entered on the birth certificate as the father of the child, unless paternity has been determined otherwise by a court of competent jurisdiction.” There is no indication in the record that Mr. Flores and the Mother misinformed the hospital as to the Mother's marital status.

. The limited record is unclear on this point.

. Section 742.18(l)(a) "establishes circumstances under which a male, may disestablish paternity or terminate a child support obligation when the male is not the biological father of the child.” (emphasis added). As the Mother, not Mr. Flores, is the party seeking to disestablish paternity, this section is not applicable.

.As diminished capacity is not a basis to challenge a legal father's paternity under section 742.10(4), the discussion is limited to fraud and duress.

. The lower tribunal’s docket indicates that Mr. Flores’ request to appoint a guardian ad litem was denied by the trial court.