DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ZION DANIEL BRONNER,**
Appellant,

v.

**BROOKE COURTNEY CAMARA LONGDEN,**
Appellee.

No. 4D2024-0638

[December 18, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Darren Shull, Judge; L.T. Case No. 502022DR010883XXX.

Elaine Johnson James of Elaine Johnson James, P.A., Palm Beach Gardens, for appellant.

No brief filed for appellee.

GROSS, J.

A man named on a birth certificate as a child's father appeals the dismissal of his petition seeking to formalize his ability to continue parenting the child. Almost six years after the child's birth, the child's purported biological father appeared and, along with the mother, sought to evict the birth certificate father from the child's life. The circuit court granted a motion to dismiss the birth certificate father's petition, making findings of fact without holding an evidentiary hearing. We reverse the order of dismissal and remand for an evidentiary hearing consistent with Florida Statutes.

### *Bronner's Verified Petition*

In January 2023, Zion Bronner filed a verified Second Amended Petition to determine parental responsibility and to obtain other relief. Bronner alleged:

- He is the father of J.Z.B. (the "child") born July 25, 2017.

- He and respondent Brooke Longden (the "mother") "had sexual intercourse in 2016 during the late summer and early autumn when the minor child was conceived," and he was present at the child's birth.

- He and the mother completed a voluntary acknowledgment of paternity under penalty of perjury, which the West Boca Medical Center submitted to the state, and neither party revoked the acknowledgment of paternity within 60 days after signing it.

- He was listed as the father on the child's birth certificate and has cared for and supported him all his life.

- Paternity has previously been established as a matter of law under chapter 742, Florida Statutes.

- He has never contested and expressly does not contest the paternity of the child.

Bronner asked for a parenting plan establishing parental responsibility and time-sharing. He alleged that (1) he had been the primary caretaker for the child, (2) between 2020 and June 2021, the child had resided with him five or more days a week, and (3) between June and September 2021, the mother had experienced housing instability, so the child resided with him seven days a week until the mother returned to her own father's home. Bronner further alleged that when the child began kindergarten in August 2022, the parties had timeshared the child in alternate weeks.

Bronner pled that during the Thanksgiving and Christmas holidays in 2022, the mother refused to allow the child to spend even a few hours with Bronner and his own daughter, the child's younger half-sister. Bronner asserted that the mother announced in a December 2022 text that she would (1) prohibit him from having any contact with the child, (2) remove the child from an A-rated kindergarten near both the parties' homes, and (3) change the child's last name from "Bronner" to something else. Bronner contended that after the mother's new partner moved in with her, she became increasingly resistant to Bronner having any role in the child's life.

### *The Mother Responds to the Petition*

In a verified motion, the mother moved to dismiss Bronner's petition. Among other things, she alleged:

- Bronner is not the child's biological father.

- The mother had never been married to Bronner. He had been her boyfriend at the time she gave birth to the child and pressured her into adding his name to the child's birth certificate.

- The mother knows the identity of the biological father of the child.

- In his petition, Bronner did not allege that he was the biological father of the child.

- Bronner's paternity could not be established based upon his name being on the child's birth certificate.

The mother further denied that she or Bronner had executed an acknowledgment of paternity.

After a hearing in February 2023, the circuit court denied the mother's motion to dismiss.

The mother answered the petition in March 2023 and counter-petitioned to determine paternity. She alleged that Bronner was not the child's biological father and that she had agreed to add his name to the acknowledgment of paternity under duress because of his coercion.

### *The Purported Biological Father Files a Separate Paternity Action*

In May 2023, almost six years after the child's birth, in a separate circuit court case, Braxton George Alexander Francis petitioned through counsel to determine paternity and for other relief (the "Francis action"). He alleged that he was the child's biological father, he had never been married to the mother, and it would be in the child's best interest that Francis and the mother share parental responsibility and time-sharing. In July 2023, Francis moved to intervene in the pending Bronner/Longden action. Bronner was not served in the Francis action as an interested party.

On July 25, 2023, the circuit judge in the Francis action entered an agreed final judgment of paternity. The judgment declared Francis to be the child's biological father and stated that the parties had agreed to mediate the issues of parental responsibility, timesharing, and child support.

3

### *After DNA Testing Excludes Bronner as the Child's Biological Father, the Circuit Court Dismisses Bronner's Petition*

After pretrial skirmishing, the circuit court ordered DNA testing.[1] On October 23, 2023, the mother filed the DNA test results, which indicated that Bronner was not the child's biological father.

The mother moved to dismiss Bronner's petition based on the DNA test results. Bronner opposed dismissal arguing that his status as the child's legal father could not be terminated without holding an evidentiary hearing where the mother had the burden of proving fraud, duress or material mistake of fact which led to the placement of Bronner's name on the birth certificate.

At a January 2024 hearing, the circuit court heard arguments by both attorneys. The hearing was not an evidentiary hearing. No witnesses were called, no one was examined or cross examined, and no exhibits were marked or introduced in evidence.

In February 2024, the circuit court entered an order granting the mother's motion to dismiss. Even though the court had not conducted an evidentiary hearing, the order included many factual findings. For example, the court determined that the acknowledgment of paternity "was fraudulently signed," and that neither the mother nor Bronner "thought there was any possibility that Zion Bronner was the child's biological father."

### *Discussion*

We agree with Bronner that a motion to dismiss was at issue here, not a motion for summary judgment, or a ruling after an evidentiary hearing or trial.

"A motion to dismiss tests the legal sufficiency of the complaint" or petition. *Barbado v. Green & Murphy, P.A.*, 758 So. 2d 1173, 1174 (Fla. 4th DCA 2000). "[T]he court must accept the facts alleged therein as true and all inferences that reasonably can be drawn from those facts must be drawn in favor of the pleader." *J.T.J. v. N.H.*, 84 So. 3d 1176, 1179 (Fla. 4th DCA 2012) (quoting *Lander v. Smith*, 906 So. 2d 1130, 1032 (Fla. 4th DCA 2005)).

---

[1] Bronner did not challenge the order by petition for certiorari. *See, e.g., J.A.I. v. B.R.*, 160 So. 3d 473 (Fla. 2d DCA 2015).

When an unmarried mother gives birth to a child, section 382.013, Florida Statutes (2017), describes how the execution of an acknowledgment of paternity leads to the placement of a father's name on a birth certificate:

> If the mother is not married at the time of the birth, the name of the father may not be entered on the birth certificate without the execution of an affidavit signed by both the mother and the person to be named as the father. The facility shall give notice . . . of the alternatives to, the legal consequences of, and the rights, including, if one parent is a minor, any rights afforded due to minority status, and responsibilities that arise from signing an acknowledgment of paternity . . . . Upon request of the mother and the person to be named as the father, the facility shall assist in the execution of the affidavit, a notarized voluntary acknowledgment of paternity, or a voluntary acknowledgment of paternity that is witnessed by two individuals and signed under penalty of perjury as specified by s. 92.525(2).

§ 382.013(2)(c), Fla. Stat. (2017).

The execution of a voluntary acknowledgment of paternity "creates a rebuttable presumption . . . of paternity . . . subject to the right of any signatory to rescind the acknowledgment within 60 days after the date the acknowledgment was signed or the date of an administrative or judicial proceeding relating to the child, . . . whichever is earlier." § 742.10(1), Fla. Stat. (2017); *J.A.I. v. B.R.*, 160 So. 3d 473, 475 (Fla. 2d DCA 2015) (explaining that "[p]aternity would be established 'by law' when there has been an adjudication of paternity or by the filing of affidavits or stipulation acknowledging paternity as provided in section 742.10") (quoting *I.A. v. H.H.*, 710 So. 2d 162, 164 (Fla. 2d DCA 1998)).

If the acknowledgment of paternity is not rescinded within 60 days, "[the] voluntary acknowledgement constitutes an establishment of paternity that can only be challenged in court 'on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenger.'" *A.D.A. v. D.M.F.*, 204 So. 3d 523, 527 (Fla. 4th DCA 2016) (quoting § 742.10(4), Fla. Stat.); *see Allison v. Medlock*, 983 So. 2d 789, 791 (Fla. 4th DCA 2008) (recognizing that the party "challenging the presumption of paternity" "has the burden of proof"). "Clearly, the section 742.10(1) presumption should not apply if the Acknowledgment of Paternity was fraudulent." *A.D.A.,* 204 So. 3d at 527.

5

If a voluntary acknowledgment of paternity is unchallenged, the paternity of the father is established, and he is "neither required nor permitted to take action under chapter 742 to further establish his paternity. Nor [is] he required or permitted to take steps to adopt [the child]." *Van Weelde v. Van Weelde*, 110 So. 3d 918, 920–21 (Fla. 2d DCA 2013). Thus, in *Van Weelde*, the court explained that "once the voluntary Acknowledgement of Paternity was signed and the [father]'s name was placed on [the child]'s birth certificate, the [father] became [the child]'s legal father for all purposes. As a child with both a mother and father named on his birth certificate, [the child] was a legitimate child." *Id.*

Bronner's petition alleged facts that would make him a "legal father" entitled to the benefit of a presumption of paternity under Chapter 742. *Van Weelde*, 110 So. 3d at 920–21. He alleged that, since the child's birth, he has actively coparented the child consistent with his status as a legal father. Accepting the facts in the petition as true, we must assume that Bronner was listed as the father on the child's birth certificate after the parties had voluntarily completed an acknowledgment of paternity. *See Flores v. Sanchez*, 137 So. 3d 1104, 1108–09 (Fla. 3d DCA 2014) (holding that because the father's "name appears on the [c]hild's birth certificate as the [c]hild's father, we must assume that the hospital complied with section 382.013(2)(c) by obtaining an affidavit or a voluntary acknowledgment of paternity from [the father] and the [m]other"); *N.D. v. J.B.*, 381 So. 3d 1268, 1270 (Fla. 2d DCA 2024) ("[b]ecause [the father] is named on the child's birth certificate, he was not required to prove that the underlying documents were executed correctly."). Because neither party revoked the acknowledgment of paternity within 60 days after signing it, it gave rise to the presumption that Bronner "is the [c]hild's legal father". *See Flores*, 137 So. 3d at 1109; *N.D.*, 381 So. 3d at 1270 (holding that "[b]ecause the parties did not rescind the acknowledgement within sixty days, N.D.'s paternity was established by operation of law").

Here, the mother has alleged the existence of duress or fraud in the execution of the acknowledgment of paternity. The circuit court erred by finding the existence of duress or fraud based on the arguments of counsel, without holding an evidentiary hearing.

We reverse the order of dismissal and remand to the circuit court to hold an evidentiary hearing on the mother's claim that the acknowledgment of paternity should be voided due to fraud, duress, or material mistake of fact. At such a hearing, the burden of proof shall be on the mother to establish the facts that would negate Bronner's status as the legal father. *See* § 742.10(4), Fla. Stat. (2017) (providing that after a 60-day period, "a signed voluntary acknowledgment of paternity shall

6

constitute an establishment of paternity and may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenger").

*Reversed and remanded.*

WARNER and MAY, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***